GAD B. WORTHINGTON, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1872.)

Plaintiff hired K., a cartman, to transport goods from the freight-house of the defendant, a railroad company, over whose road they had been shipped, and deliver them at his store at a certain price per ton, giving him no authority to pay the freight upon the goods.  K. paid out of his own money, on delivery of the goods to him, defendant's bill for the freight thereupon, and collected the amounts so paid from plaintiff, without his knowledge that K. had advanced the charges.  These bills for freight included "back charges" paid by the defendant for freight upon connecting roads, which were falsely made out by defendant's clerk having charge of the business, by overcharging the amounts which defendant had so paid.

Held, that plaintiff could not recover back the over payments, on the ground that they were made by mistake, and that plaintiff had no knowledge or means of knowledge, at the time of the payment, of their incorrectness, as the payments were not made by him nor with his money, and K. was not his agent to make such payments.

THIS action was brought to recover back moneys alleged to have been paid by the plaintiff and by his assignors, to the agents of the defendants, for excessive charges on freight transported over the defendant's railroad, in the years 1865 and 1866. The cause was tried before a justice of this court and a jury at the Genesee circuit in June, 1871.

It appeared upon such trial that the plaintiff was a merchant, doing business in Batavia, and having goods shipped to him over defendant's road.

These goods were taken from the defendant's freight-house, and delivered to the plaintiff at his store, by one Kinney, a cartman, with whom the plaintiff had a contract to cart his goods at a certain price per ton.

The charges for freight were paid to the defendant by Kinney, the cartman, out of his own money at the time he took the goods from the freight-house, and the bills were then receipted and given to him.

The plaintiff paid the amount to the cartman which he had advanced for the freight. He did not advance any money to the cartman to pay the charges for freight, nor did he have any arrangement with the cartman that he should advance or pay the freight or charges on the goods, and the plaintiff should pay him.

The plaintiff, at the time he paid these bills to the cartman, did not know that defendant's charges had been paid by the cartmen.

The plaintiff was familiar with defendant's charges and rates of freight, and had access to their freight register in defendant's freight office at Batavia, in which were entered the charges for freight, corresponding with the way-bill.

The charges made by connecting roads, which the defendant paid and charged and collected from persons receiving freight at its hands, were marked on the bills paid by plaintiff, as back charges, in a separate item.

The business was done in the same manner with plaintiff's assignors.

The amount of freight and back charges appearing on

Worthington v. The New York Central Railroad Co.

defendant's freight register at their freight office in Batavia, was $266.58 less than the amount actually paid by the plaintiff and his assignors. No part of such excess was received by the defendant.

At the close of the evidence the defendant asked for a dismissal of plaintiff's complaint upon the following grounds, among others:

"There is no proof that the plaintiff or his assignors have paid any money to the defendant or to those in its employment.

"The proof shows that all moneys claimed to have been paid as overcharges were voluntarily paid, with full knowledge, or with the means of knowledge, in possession or reach of those paying.

"The evidence fails to establish any contract to transport or deliver plaintiff's goods at Batavia at a fixed or certain price.

"No cause of action, under the complaint, proved against the defendant."

The court refused to dismiss the complaint, and the defendant duly excepted.

The counsel for the defendant also requested the court to instruct the jury "that if the excess of charges was paid by the plaintiff, he having at the time the means of ascertaining at the freight office whether or not the amount charged was correct, it was a voluntary payment, and the plaintiff could not recover."

The court refused so to charge, and the defendant duly excepted to such refusal. The jury rendered a verdict for the plaintiff for $349.36, and from the judgment entered thereupon the defendant appealed.

*A. P. Laning*, for the appellant.

*Wakeman & Taggart*, for the respondent.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

By the Court—JOHNSON, J.   The action is to recover money paid by the plaintiff and his assignors to the defendant under a mistake of fact.   When this case was before us on a former occasion for review of another trial, we held that according to the facts found by the referee the payments appeared to have been voluntary and not under any mistake of fact, but with full knowledge, or the means of knowledge, on the part of the persons making the payment, of all the facts and circumstances.   If that were the only difficulty in the case, I think we should now hold that that difficulty had been overcome on the trial now under review.   It appeared on the last trial that the overcharges which had been paid were nearly all on back charges, and that the plaintiff and others making the payments had no means of ascertaining whether they were correct or not, but paid them in good faith according to the bills presented, supposing and believing them to be correct.   These back charges were charges made by connecting roads, which the defendant paid, and charged and collected from persons receiving freight at its hands, which had come over these connecting roads.   The bills on which these payments were made were falsely made up by the defendant's clerk and agent having charge of the business, by overcharging the amounts which defendant had so paid.   This, we are inclined to think, would bring the case fairly within the rule in regard to money paid by mistake on the part of the person paying through the fraud of the other party.   But the other difficulty, that by far the largest portion of the money paid to and received by the defendant's agent was not and has never become the money of the plaintiff or of his assignors, still remains and appears to be inseparable.   Of course this action cannot be maintained unless the plaintiff can show that the defendant, or his agent authorized to receive money in payment of charges for freight, has received his money, or that of his assignors.   It was paid by Kinney, the cartman, who had no authority to pay it, and who did not profess or undertake to pay it as their agent.   He was not the agent of

the defendant in any sense, and was in no respect in their employment. He had a contract with the plaintiff and his assignors to transport their goods from defendant's warehouse and deliver them at a certain price per ton. For that purpose he may be regarded as their agent or employe, but he had no authority to advance money and pay charges on their account. These payments he made voluntarily with his own money, and took the bills receipted with the goods; and the sums paid was reimbursed to him without any knowledge, on the part of the owners of the goods, that he had paid the bills to the defendant. How, then, does the plaintiff get any title to this money overpaid in the defendant's hands? Certainly, when the defendant received it and gave a receipt in full, neither the plaintiff nor his assignors had any right or title to it whatever. It was advanced to the defendant by a volunteer, who did not assume to act as their agent in the transaction of paying the money, but who advanced his own funds, taking the risk of their paying him. The cartman, upon the facts which appear in the case, could not have compelled them to pay him these advances which they had never requested him to make on their account, and which they had never assented to or sanctioned in any way, except, perhaps, by retaining the goods. But, whether this is so or not, makes little or no difference in this case. The case is simply and sharply this: Kinney paid their debts voluntarily, without any request or authority; and they, without knowing this, pay him what he has advanced. The question then is, does this give them any title to the money paid by Kinney to the defendant? Clearly, not. The mere naked statement of the proposition is sufficient to refute the plaintiff's claim. It is, in this action, a question of title, and not of equitable subrogation to any claims Kinney may be supposed to have. Probably Kinney could not have maintained any action of this kind against the defendant, as it had no demands against him, and he was under no obligation to pay anything. If the plaintiff, by reason of his over-payments and assignments, has any title to any money, it must be to that in Kinney's

hands, instead of that in the hands of the defendant. It does not vary the case on this question that Kinney was told by defendants' agents to bring back the goods in case the owners refused to pay what he had advanced, as none were ever returned. Over-charges of this kind paid by the plaintiff to the defendant, or to its agent duly authorized to receive mone for such charges, or by his assignees, stand upon a differe footing, and we think may be recovered upon the facts whi appear in the case. But little, if anything, appears to have been paid in that way.

. The judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event.

New trial granted.